IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 7, 2014

**ANTHONY CLINTON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 09-02125     James Lammey, Jr., Judge**

_____

**No. W2013-00183-CCA-R3-PC  - Filed January 30, 2014**

_____

Petitioner, Anthony Clinton, was convicted by a Shelby County jury of robbery, a Class C felony, and was sentenced as a career offender to fifteen years in the Tennessee Department of Correction.  Following an unsuccessful direct appeal, he filed the instant petition for post-conviction relief.  The post-conviction court held an evidentiary hearing and denied relief.  Appealing from the post-conviction court's order, petitioner pursues the following claims of ineffective assistance of counsel: (a) failure to file a motion to suppress his identification; (b) failure to file a motion to suppress the evidence seized during the search of his person; and (c) failure to obtain copies of the store surveillance tapes and the 9-1-1 recordings.  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Rosalind E. Brown, Memphis, Tennessee, for the petitioner, Anthony Clinton.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Amy P. Weirich, District Attorney General; and Jessica Banti, Assistant District Attorney General, for the respondent, State of Tennessee.

**OPINION**

I.  Facts and Procedural History

A.  Facts from Trial

On direct appeal, this court summarized the evidence presented at petitioner's trial as follows:

This case relates to a robbery of an Exxon convenience store on East Shelby Drive in Memphis, Tennessee. Sophia Chambers testified that she worked at the store on January 2, 2009. She said she was trained in various aspects of being a sales associate including being trained to pay attention to a customer's appearance and in procedures to follow during a robbery.

Ms. Chambers testified that because her shift was to end soon, she placed the cash register money into the store safe at approximately 8:50 p.m., leaving only sixty dollars in the register. She said no customers were in the store. She stated that after she placed the money in the safe, a young boy and a teenage girl entered the store. She said the Defendant entered the store after them but he did not appear to be with the younger customers.

Ms. Chambers testified that the Defendant "caught" her eye as he walked through the store. She said the Defendant watched the young boy and girl and walked back and forth in front of one of the drink coolers. She said that the young customers approached the counter to pay for the items they selected and that the Defendant walked behind them as though he was ready to pay for an item. She said that the Defendant hovered over the young customers as he moved closer to the counter and that his actions scared her.

Ms. Chambers testified that after the teenage girl paid for the items and the cash register was open, the Defendant shoved the young boy, jumped onto the counter, and reached into the cash register. She stated that the Defendant pushed her and that she slammed the cash register drawer shut on his arm many times. She stated the Defendant fought her with the elbow of the arm caught in the cash register and with his other arm to make her back away. She said that she continued to push the cash register drawer closed while the Defendant's arm was still caught in the drawer but that the Defendant was able to remove his arm and take money from the drawer before she could close the cash register. Just before the Defendant got the money, he had moved his arm enough to cause Ms. Chambers to mash two of her fingers as she tried to close the cash register.

Ms. Chambers testified that she was afraid of the Defendant and thought he wanted to attack her but that she realized the Defendant "just wanted the money." She said she did not attempt to retrieve the money from the Defendant because she was afraid. She stated that after the Defendant "jumped back over the counter" and ran to the door to leave, he gave her an intimidating look that scared her. Ms. Chambers said that she did not know what the Defendant was going to do and that she just stood behind the cash

register and watched the Defendant. Ms. Chambers stated that after the Defendant left the store, she went to the door to look outside and saw the Defendant sitting in a "silver-grayish" Oldsmobile with Tennessee tag number 228SWW. Ms. Chambers said the Defendant drove northbound on Kirby toward Raines.

Ms. Chambers testified that after the Defendant drove away, she locked the doors to the store and asked if the boy and girl would stay to speak with the police. She went back to the cash register and determined that a twenty-dollar bill was missing from the register. She spoke with a 9-1-1 dispatcher and provided a description of the man and his car, the time he entered the store, and the direction in which he drove. She said the police arrived approximately ten minutes after she was robbed with a suspect in the back seat of the police cruiser. She said the police asked her to identify the man, whom she recognized as the man who robbed her.

Ms. Chambers testified that after the robbery, she remained scared, did not return to work for one week, and stayed home most of that week. She said she was too frightened to go back to any Exxon convenience store during that time. Ms. Chambers said she was scared because she did not know if someone would target her or if the Defendant remained in jail. She stated that she used Exxon's mental health counseling service for two days after the robbery and that her hand was sore for three days.

On cross-examination, Ms. Chambers testified that there were eight or more surveillance cameras inside the store. She said approximately fifteen police officers were at the store after the robbery and recalled speaking with Officers Robinson and Valentine. She said that when she gave her statement to the police the night of the robbery, the police were aware of the eight surveillance cameras. She said she did not know if the police gathered the video recordings from the surveillance cameras because after the police arrived, she identified the Defendant in the backseat of the police cruiser, the Defendant was placed in custody, and she drove with her friend, Latoya Boatwright, to the police station to make her statement.

Ms. Chambers testified that while she and the Defendant struggled over the cash register, the Defendant jumped onto the counter but did not make it behind the counter. She said that when she said "over the counter" in her formal police statement, she meant that the Defendant had to jump over the shelves in front of the counter.

. . . .

Memphis Police Officer Herman Robinson testified that on January 2, 2009, he received a radio communication to be on the lookout for a late model silver, four-door Oldsmobile Intrigue driven by a black male. Officer Robinson said he saw a car matching the description approximately six minutes later. Officer Robinson stated that he activated his blue lights and honked his horn and siren. The car stopped and Officer Robinson identified the Defendant as the driver. Officer Robinson said he found a twenty-dollar bill in the Defendant's pants pocket. The twenty-dollar bill was received as an exhibit.

. . . .

Officer Robinson said Ms. Chambers identified the Defendant without hesitation as the person who robbed her. Officer Robinson said Ms. Chambers stated that the Defendant was able to get the money by shoving her backwards and that she injured her hand during the robbery.

*State v. Anthony Clinton*, No. W2010-02157-CCA-R3-CD, 2011 WL 4026863, at *1-3 (Tenn. Crim. App. Sept. 12, 2011), *no perm. app. filed*.

## B. Procedural History

Petitioner filed a timely petition for post-conviction relief, and through appointed counsel, he filed an amended petition. The post-conviction court held an evidentiary hearing, after which it denied relief.

## C. Facts from Evidentiary Hearing

At the November 12, 2012 evidentiary hearing, petitioner called trial counsel as his first witness. Trial counsel testified that he represented petitioner in a robbery case in 2009 involving an Exxon gas station. He stated that during the course of his representation, an issue arose concerning the identification of petitioner. Officers did not utilize a photographic line-up; rather, they conducted a "show-up" identification almost immediately after the robbery occurred. Petitioner was arrested approximately four miles from the Exxon station.

According to trial counsel, petitioner did not deny being present at Exxon and taking money. He claimed that it was a theft and not a robbery. The victim testified at the preliminary hearing, and trial counsel had her testimony transcribed. Trial counsel stated that in his experience, if a surveillance tape from a store such as Exxon was not obtained during

-4-

the initial investigation, it would not be available because the tape is "looped" every six hours and would have been taped over very quickly. Trial counsel requested a copy of the 9-1-1 recording, but he learned that those calls are preserved for only a period of months. He received a copy of the event chronology, but the tape itself was no longer available. Moreover, he stated that in his experience, 9-1-1 tapes never assisted his clients. He anticipated that the recording would have stated, "'We've been robbed,'" which was "the last thing" he would have wanted the jury to hear.

Trial counsel explained that there was no allegation that petitioner used a weapon. The robbery charge was predicated upon placing the store clerk in fear. Trial counsel did not file a motion to suppress the "show-up" identification. He testified, "[I]f I thought I had grounds, I would have filed a motion; however, I take the rules seriously[,] and it's against the rules to file a frivolous motion[.]" He gleaned from the discovery material that the Exxon parking lot was "extremely well-lit" and that the store clerk alleged that petitioner's car was parked on the side of the building where she could see it when she walked outside. She was able to write down the vehicle's tag number, and the number matched the automobile that petitioner was driving on the night in question. The victim also identified petitioner at the preliminary hearing.

Trial counsel recalled the circumstances of the offense and said that the allegation was that petitioner forcefully removed $20 from the cash register when the clerk opened it to complete a transaction with another customer. When petitioner was arrested, an officer removed a single $20 bill from petitioner's pocket. Trial counsel did not recall whether petitioner said that he had other money in his possession when he was arrested.

On cross-examination, trial counsel acknowledged that petitioner's claim was that he "'shoplift[ed]'" the money from the cash register and that he did not utilize a weapon or place the victim in fear. Petitioner never denied to trial counsel that he was present; he merely asserted that he committed a theft and not a robbery. He opined that even if petitioner had denied being present, there would not have been a basis for moving to suppress the show-up identification.

Trial counsel confirmed that he had over thirty years of experience practicing law and that he had tried over one hundred cases. As such, he pursued the best defense available to petitioner, which was that he committed a misdemeanor and not a felony. The defense was in contravention of the victim's testimony that she smashed her fingers in the cash register drawer as she attempted to slam it shut and that she struggled with petitioner. The customer at the counter testified that she witnessed the struggle between petitioner and the clerk and identified petitioner at trial.

Petitioner then testified on his own behalf. He denied having admitted to trial counsel that he committed a theft at Exxon. He claimed that the first time he saw the clerk was at the preliminary hearing. He maintained that when he was arrested, law enforcement seized over one thousand dollars from him but that "the only thing that came up" was the $20 bill. Petitioner stated that he asked trial counsel to obtain surveillance footage from Exxon but that he failed to do so. He also said that when the police drove him back to Exxon for the show-up identification, he remained in the car, which was parked approximately ten feet away from the clerk's vantage point. He did not believe that she could see him from where she was located.

On cross-examination, petitioner indicated that he believed that the arresting officer coerced the victim's identification of him. He claimed that the officer said to the victim in court, "'That's him right there, about the fifth from the right.'" He said that they were trying to solve the case and that he "fit the bill" because he had similar charges on his record. He acknowledged that he had seven prior robbery convictions and twelve prior theft convictions before this charge.

At the close of the hearing, the post-conviction court made the following oral findings:

I didn't believe a word [petitioner] had to say[,] to be honest; and, so, . . . there's no way, in my opinion[,] . . . he has carried his burden of proof as to either prong of the *Strickland* case.

According to *Strickland [v.] Washington*, [petitioner] must first show the counsel's errors were so serious as to deprive . . . petitioner of effective assistance of counsel as guaranteed by the [S]ixth and [F]ourteenth [A]mendments to the United States Constitution. Well, there were no errors – there were none. In fact, I can't think of a single thing that [counsel] did wrong other than, perhaps, maybe, not forcing [petitioner] to take [the plea] offer that he was given. [Petitioner] . . . was the cause of his own demise; and, of course, a lawyer can't force a client to do that.

And even today, [trial counsel] is willing to help out [petitioner]. It's just one who I don't think deserves any type of consideration, whatsoever. He clearly lied to me under oath today. So, there is no violation of the first prong of *Strickland* . . . [C]onsequently, the second prong [is] that . . . petitioner must show that counsel's performance prejudiced [petitioner][,] therefore[] denying [petitioner] a fair trial. That is[,] performance must fall below the objective standard of reasonableness.

I find that [petitioner] has not carried his burden of proof in this matter[,] and the petition for post-conviction relief is denied.

This appeal follows.

## II. Analysis

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). Further, to establish that he suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

We now turn to petitioner's complaints of ineffective assistance of counsel. His argument on appeal consists of one-half of a page, in which he lists the following allegations

of ineffective assistance of counsel: "trial counsel's (a) failure to seek suppression of his identification; (b) failure to seek suppression of evidence resulting from the search and seizure; [and] (c) failure to get copies of the store surveillance tape and 9-1-1 call tape." He makes the statements that "[p]etitioner further contends that trial counsel's failures fell well below the range of competence demanded of an attorney in a criminal case" and that "he was prejudiced by [t]rial [c]ounsel's failures."

Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure provides that a brief shall contain "[an] argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." Tennessee Court of Criminal Appeals Rule 10(b) states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." *State v. Brock*, 327 S.W.3d 645, 696 (Tenn. Crim. App. 2009). Petitioner failed to set forth any argument whatsoever with regard to how trial counsel performed deficiently or how, exactly, he suffered prejudice as a result thereof. Although petitioner cites both the *Strickland* and *Baxter* cases as propositions of law, he makes no citation to the record directing this court to testimony in support of his assertions of error. Therefore, we conclude that petitioner has waived appellate review of the post-conviction's order denying relief in this case.

## CONCLUSION

Based on the record as a whole, the parties' briefs, and applicable legal authorities, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE